**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:07CV290-RJC-DSC**

| | |
|---|---|
| **TERRAINE SANCHEZ BYERS,** ) | |
| ) | |
| **Petitioner** ) | |
| ) | |
| **v.** ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| ) | |
| **ANTHONY HATHAWAY, Supt.,** ) | |
| **Bertie Correctional Inst.,** ) | |
| ) | |
| **Respondent.** ) | |

    **THIS MATTER** comes before the Court upon Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 filed June 24, 2007 (document #1); Respondent's Response to Petition for Writ of Habeas Corpus (document #7), Motion for Summary Judgment (document #8), and Memorandum in Support (document #9) all filed on October 23, 2007; and Petitioner's Response to Motion for Summary Judgment filed February 6, 2008 (document #11).

    On August 31, 2010, this matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B).

    Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment be granted and Petitioner's Petition for a Writ of Habeas Corpus be dismissed, as discussed below.

## I.  PROCEDURAL BACKGROUND

    On March 3, 2004, Petitioner was convicted, after trial by jury, of first-degree murder and first-degree burglary based upon premeditation and deliberation and felony murder in Mecklenburg County Superior Court.  Petitioner was sentenced by Judge Albert Diaz to life without parole on the

first-degree murder charge, and 77 to 102 months imprisonment on the first-degree burglary charge.

Petitioner appealed and on January 3, 2006, the North Carolina Court of Appeals issued a published opinion finding no error and denying a *pro se* motion for appropriate relief (MAR). <u>State v. Byers</u>, 623 S.E.2d 357 (N.C.App. 2006). On April 6, 2006, the North Carolina Supreme Court denied Petitioner's *pro se* petition for discretionary review (PDR) of the North Carolina Court of Appeals' decision. <u>State v. Byers</u>, 631 S.E.2d 135 (N.C.App. 2006).

Petitioner dated a second *pro se* MAR July 31, 2006 and filed it in Mecklenburg County Superior Court. Judge Diaz ordered a response from the State, which was filed January 29, 2007. Judge Diaz summarily denied this MAR on February 15, 2007. Petitioner then filed a *pro se* document entitled, "Rebuttal Brief and Amendment to the Motion for Appropriate Relief," which Judge Diaz summarily denied on February 20, 2007. Petitioner dated a *pro se* certiorari petition April 20, 2007 and filed it with the North Carolina Supreme Court on May 8, 2007. Certiorari was dismissed on June 27, 2007. <u>State v. Byers</u>, 648 S.E.2d 849 (N.C. 2007).

Petitioner dated his *pro se* federal habeas application form July 11, 2007 and filed it in this Court on July 24, 2007. Petitioner alleged in the initial petition that: (1) his confrontation rights were violated under <u>Crawford v. Washington</u>, 541 U.S. 36 (2004); (2) his Sixth Amendment confrontation rights were violated when the trial court allowed the state to introduce unrelated prior convictions which were inadmissible under Rule 404(b); (3) the trial court's jury instructions violated due process because they did not require a unanimous verdict; (4) the short-form murder indictment violated <u>Blakely v. Washington</u>, 542 U.S. 296 (2004); (5) he received ineffective assistance of counsel due to trial counsel's failure to object and thereby preserve evidentiary issues for appeal; and (6) he received ineffective assistance of counsel due to trial counsel's failure to have DNA tests conducted on certain evidence and appellate counsel's failure to raise the DNA issue on

appeal.

Petitioner also filed a Motion for Leave to Proceed in forma pauperis (document #2) and Motion to Appoint Counsel (document #3) on July 24, 2007. On July 30, 2007, U.S. District Judge Graham Mullen denied Petitioner's Motion for Leave to Proceed in forma pauperis and Motion to Appoint Counsel (document #4).

On October 23, 2007, Respondent filed a Response to Petition for Writ of Habeas Corpus (document #7), as well as a Motion for Summary Judgment (document #8) and supporting memorandum (document #9). On February 6, 2008, Petitioner filed a Response to Motion for Summary Judgment (document #10).

On July 29, 2009, Petitioner filed a Motion to Abandon Unexhausted Claims (document #14). On September 9, 2009, Petitioner filed a Motion to Supplement Pleadings (document #15). On February 23, 2010, Petitioner filed a Motion to Amend/Correct Petition for Writ of Habeas Corpus (document #16). On February 25, 2010, Respondent filed a Response in Opposition to Petitioner's Motion to Amend/Correct Petition for Writ of Habeas Corpus (document #17).

On April 12, 2010, Judge Mullen issued an Order (document #19) granting Petitioner's Motion to Abandon Unexhausted Claims and dismissing without prejudice claims three, four and six of Petitioner's Petition for Writ of Habeas Corpus. In addition, Judge Mullen granted Petitioner's Motion to Supplement his fifth claim to allege that counsel was ineffective for failing to object to the subject testimony in violation of the Sixth Amendment and the Due Process Clause. Finally, Judge Mullen granted Petitioner's Motion to Amend his second claim to allege that the trial court violated his right to confront his accusers under the Fifth and Fourteenth Amendments rather than the Sixth Amendment under <u>Crawford v. Washington</u>, 541 U.S.36 (2004), because the Court found no material difference between the original claim and Petitioner's proposed amended claim.

Based on this Order (document #19), Petitioner's remaining allegations under his habeas petition are claims one, two and five, as amended.

## II. FACTS

The North Carolina Court of Appeals summarized the facts underlying Petitioner's convictions as follows:

> The State's evidence tended to show the following: On 22 November 2001, Reginald Williams visited Shanvell Burke (the victim) at her home located at 609 North Davidson Street, Charlotte, North Carolina. He arrived at 7:30 p.m., the two settled in, and watched a movie. Shortly after 9:00 p.m., they heard a crash at the back door. Burke went to the back door and started yelling "Terraine, stop." Williams, in fear for his life, ran out the front door to the bus terminal down North Davidson Street. There, he located a bus driver who called 911 for him.

> Later, in explaining why he ran, Williams said Burke previously had allowed him to listen to telephone messages left for her by defendant, her ex-boyfriend. In one message, defendant stated he thought Burke was messing with somebody "and when he found out who it was, he was gonna kill them." Burke expressed to Williams her fear of defendant. "She was afraid he was going to do something to hurt her bad."

> Tonya Gregory lived next to the victim. In the summer of 2001, the victim had introduced defendant to Gregory as her boyfriend. Returning home on 22 November 2001 around 8:00 p.m., Gregory observed defendant on the sidewalk near the back door area of the victim's apartment. Later that evening, Gregory heard "bamming noises" coming from the victim's kitchen.

> On 22 November 2001, shortly after 9:00 p.m., Charlotte-Mecklenburg Police Officer Michael King and another officer were dispatched on a 911 hang up call to Burke's apartment. Walking through the apartment breezeway to the back, Officer King observed a nervous and profusely sweating man (later identified as defendant) coming out of an apartment through a broken window in a door. Officer King and the other officer asked for identification and inquired if defendant lived in the apartment. Defendant did not produce identification and responded "no" when asked if he lived in the apartment he exited.

> Defendant stated that a female lay inside the apartment, and she was hurt. While speaking, he turned, re-entered the apartment through the broken glass door and ran toward the front door. Officer King ordered defendant to stop and then requested backup. A foot pursuit ensued resulting in the apprehension of defendant in the parking lot. Defendant had a deep laceration on his left hand. Upon entering the apartment, Officer King and other officers observed a knife handle with a broken

blade. Burke was found in a pool of blood on the kitchen floor.

Officer Jason Joel Kerl also responded to the scene. Upon entering the apartment, he recognized Burke. Eleven days prior to her death, Officer Kerl responded to a domestic call at the Burke's apartment. Appearing "nervous and frightful that she was going to get hurt," Burke related that her boyfriend had been locked up for domestic violence, been released from jail, and returned to bother her. Five days later, Officer Kerl responded to another call at Burke's residence and, again, she appeared upset and was worried defendant was going to assault her.

On 30 August 2001 at 10:30 p.m., Charlotte-Mecklenburg Police Officer Matthew Presley Montgomery responded to an emergency call at 1923 Wilmore Drive. There, he met Burke and her aunt. As Officer Montgomery related: "[Burke] was extremely upset, she was shaking, she was almost crying since we were out in the street. I remember neither one of them could stand still; they were very excited." The two women screamed at defendant, who ran away as the police car approached. Burke related that defendant had threatened to kill her. He had become angry because she did not want to go home with him. She also told Officer Montgomery defendant had hit her with his fist and open hand about her head and face and on her back, pushed her down and stated he was going to kill her. Burke's aunt related that defendant pulled a knife on her and also threatened to kill her.

Officer Mark Santaniello testified concerning a domestic violence and assault call on 28 May 2001, involving defendant and Burke. In addition, Officer Donna Browning related her response to a call from Burke on 19 September 2000. Burke complained to Officer Browning that defendant threw bricks at her window and that she feared him.

Dr. James Michael Sullivan performed the autopsy on the victim's body. He found eleven stab wounds, the most serious to the left chest in the left breast area that penetrated through the chest wall and into the heart, causing hemorrhage into the cavity that surrounds the heart and into the left pleural cavity. This resulted in a large amount of blood loss.

Another significant stab wound entered the right chest, six inches into the chest cavity, injuring the right lung. This wound produced small to moderate amounts of bleeding in the right chest cavity. Dr. Sullivan also found eighteen puncture wounds and some twenty-three cutting wounds. Wounds on the victim's hands appeared consistent with defensive wounds. The cause of death was multiple sharp trauma injuries with death resulting from blood loss.

John Donahue, the DNA technical leader for the Charlotte-Mecklenburg Police Department Crime Laboratory, analyzed fingernail scrapings from defendant's hands; a blood stain from a couch cushion; a swab from a knife; a swab from a knife blade; and blood stains from various places in the apartment, including the upper handrail

of the stairway. The fingernail scrapings from defendant's right hand contained a mixture of DNA from the victim and defendant, with the majority contributed by defendant. The left fingernail scrapings taken from defendant revealed the victim contributed the majority of the DNA in the sample. The DNA in the blood stain on the upper handrail and the couch matched defendant's. The DNA in the blood stains from the knife and the knife blade matched the victim.

Defendant did not present evidence.

State v. Byers, 623 S.E.2d at 359-360.

### III.  STANDARD OF REVIEW

The threshold inquiries for a federal court reviewing a federal habeas petition are whether the petitioner has exhausted his claims before the appropriate state courts and whether those claims are procedurally barred.  28 U.S.C. § 2254.  In order to exhaust a claim a petitioner must have fairly presented it to the state courts.  See Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000).

If a petitioner's claim is unexhausted, it may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court.  See id.  However, when the procedural bar that gives rise to exhaustion provides an independent and adequate state law ground for the conviction and sentence, it prevents federal habeas review of the defaulted claim unless the petitioner can establish cause and prejudice for the default.  See id.

If the Court finds that Petitioner's claims are exhausted and not procedurally barred, the federal court must next examine whether or not the petitioner's claims were "adjudicated on the merits" by the state court.  If the claim was properly presented to the state court and the state court adjudicated it, the Court must then apply the highly deferential standard of review contained in 28 U.S.C. § 2254(d) to Petitioner's claims.

The standard of review set forth in Section 2254(d) is to be applied to "all claims

'adjudicated on the merits' that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999). The standard of review is "quite deferential to the rulings of the state courts." Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir. 2001). State court decisions are to be given the benefit of the doubt. Bell v. Cone, 543 U.S. 447, 455 (2005). This deference extends to summary dismissals. Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000). A habeas petitioner bears the burden of establishing his claim. Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002).

Pursuant to § 2254(d) a federal court may not grant a writ of habeas corpus unless the state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).

The Supreme Court has explained that a state court adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Burch v. Corcoran, 273 F.3d at 583 (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)). An "unreasonable application" occurs when a state court correctly identifies the correct governing principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a petitioner's case. Rompilla v. Beard, 545 U.S. 374, 380 (2005). An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. See Williams v. Taylor, 529 U.S. at 413; Schriro v. Landrigan, 550 U.S. 465, 473 (2007)("The question under AEDPA [Antiterrorism

and Effective Death Penalty Act of 1996] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold."). Therefore, this Court may not issue a writ even if it concludes in its own independent review that the relevant state court merely made an incorrect or erroneous application of the correct federal principles. Williams v. Taylor, 529 U.S. at 413.

The second circumstance where a federal court may grant habeas relief despite a state court decision on the merits is when the state court's judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The reviewing court must be mindful that "a determination of a factual issue made by a State court shall be presumed to be correct" unless the habeas petitioner rebuts this presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). See Miller-El v. Dretke, 545 U.S. 231, 240 (2005).

With these standards in mind, the Court will examine the Petitioner's three remaining constitutional claims.

## IV. ANALYSIS

### A. CLAIM ONE

Petitioner alleges that his confrontation rights were violated under Crawford v. Washington, 541 U.S. 36 (2004), because: (1) the trial court allowed damaging hearsay testimony; (2) the trial court allowed non-sworn hearsay testimony of statements made by the decedent in violation of due process; and (3) the trial court admitted testimonial hearsay statements of the decedent which were not subject to cross-examination. These three arguments were raised in Petitioner's direct appeal and were adjudicated on the merits by the North Carolina Court of Appeals.

**1. Williams' Testimony and Statements to Law Enforcement**

The North Carolina Court of Appeals denied Petitioner's claim that the trial court erred in allowing damaging hearsay testimony as follows:

> First, defendant argues the trial court committed error by allowing into evidence Reginald Williams' testimony and Williams' statements to law enforcement concerning statements the victim made to Williams, in violation of <u>Crawford v. Washington</u>, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). In the alternative, defendant argues plain error if the issue was not properly preserved at trial and/or ineffective assistance of counsel. n1

> > FOOTNOTE
> > n1 Defendant presents as an issue, whether defendant received ineffective assistance of counsel (IAC) for failure to object at trial to the admission of this evidence (although defense counsel did present a motion in limine to suppress which was denied). We also note defendant raises an IAC claim as to the admission of a criminal complaint signed by the victim regarding a prior domestic dispute involving the victim and defendant. See Issue II, infra. In his brief, however, defendant concedes that he "cannot, on direct appeal, from the naked record prove there was not some strategic reason for not objecting to these references; therefore, this error is assigned for preservation purposes only." Accordingly, this issue will not be addressed.

> Hearsay, which is generally inadmissible, "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2003); <u>State v. Canady</u>, 355 N.C. 242, 248, 559 S.E.2d 762, 765 (2002) ("[A] statement is not hearsay if it is offered for a purpose other than to prove the truth of the matter asserted."). If the statement is offered for reasons other than the truth of the matter asserted, the statement is not hearsay and is not covered under <u>Crawford</u>. <u>Crawford</u>, 541 U.S. at 59, 158 L. Ed. 2d at 197 ("The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."). <u>Crawford</u> holds that,

> > [w]here testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of "reliability." . . . To be sure, the [Confrontation] Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by

testing in the crucible of cross-examination.

Crawford, 541 U.S. at 61, 158 L. Ed. 2d at 199.

Defendant argues Williams' testimony and the following statements Williams made to law enforcement concerning statements the victim told to Williams, were admitted in violation of Crawford:

Williams' Testimony

Q: Mr. Williams, in reference to your testimony of a moment ago that you were in fear for your life, was there a time when Shanvell allowed you to listen to some telephone messages that had been left on her telephone?

A: Yes.

Q: And did she tell you who had left those telephone messages?

A: Yes.

[DEFENSE COUNSEL]: Objection.

THE COURT: Basis?

[DEFENSE COUNSEL]: Hearsay.

THE COURT: Overruled.

Q: Who did she tell you had left those telephone messages?

A: She said it was Terraine, her exboyfriend.

Q: And was there one of those messages that you listened to in particular that provided you in part with your basis for fearing for your life?

A: Yes.

Q: And what was the message that you heard on the telephone that Shanvell told you it was from Terraine and you listened to it?

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

A: The fact that he thought she was messing with somebody, somebody was putting

some stuff in her head, and when he found out who it was, he was gonna kill them.

Q: State whether or not Shanvell had ever expressed to you, yourself, that she herself feared Terraine?

A: Yes.

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.
. . .

A: She was just afraid of him. She was afraid he was going to do something to hurt her bad.

## Williams' Statement to Law Enforcement n2

A: She was just telling me, you know, why she broke up with him because he was very possessive and that he was locked up for bothering her, and she was just feeling kind of at ease while he was locked up and she was scared of him. She was scared he was gonna do something to her.
. . .

She just said one time he was fighting her and he was slapping her around.
. . .

Yeah, he [sic] said that he [sic] - she - said that he fought her a lot, but nobody knew about it
. . .

She said he was calling sometimes twenty times a day.
. . .

The time up at the Bojangles  she told me about when he popped up on her. . . . She said he was beating on her car and some stuff like that.

Q: When he would call over there when you were there on the phone [sic] were they arguing?

A: Once. He called a lot from jail. When the first time he was in jail and he was calling and she talked to him that she wanted him to go on with his life and stuff, and that was pretty much it.
. . .

Q: You said he was in jail. Had she ever mentioned to you about him being in jail?

A: Yes. . . . That was for beating her that time.

Q: Did she ever mention to you anything else about anything he had ever been involved in?

A: Dog fights, and then she - I don't want to make accusations, but she said something about drugs. I don't know.
. . .

She just was telling me how he used to beat her all the time, you know.

Q: Did she tell you when he might have actually gotten out of jail?

A: She told me that they were trying to get him out on bail or whatever. . . And then she told me the day that he got out because he popped up at her house.

Q: . . . Do you remember when it was that he went to jail for . . . assaulting her?

A: - didn't know when he went to jail.

Q: Okay. So it was several months ago?

A: Yes.

> FOOTNOTE
> n2 Williams made these statements during an interview with Detective David Phillips of the Charlotte-Mecklenburg Police Department. At trial, the jury listened to an audiotape recording of the interview and was given a transcript of the interview.

These statements were admissible, not for the truth of the matter asserted, but for purposes of explaining why Williams chose to run (in fear for his life), seek law enforcement assistance before returning to the apartment, and chose not to confront defendant single-handedly. See Canady, 355 N.C. at 248, 559 S.E.2d at 765 ("A statement which explains a person's subsequent conduct is an example of such admissible nonhearsay."); State v. Anthony, 354 N.C. 372, 404, 555 S.E.2d 557, 579 (2001); State v. Golphin, 352 N.C. 364, 440, 533 S.E.2d 168, 219 (2000). Accordingly, the trial court did not err in admitting this evidence. This assignment of error is overruled.

State v. Byers, 175 N.C. App. at 289.

Because the state court adjudicated this claim on the merits, in order to prevail on federal

habeas review, Petitioner must establish by clear and convincing evidence that the state court's ruling resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d) and (e).

The undersigned finds the Court of Appeals' adjudication did not reach a result contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States under <u>Crawford</u>.  Nor is the above quoted Court of Appeals' opinion based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding.  Therefore, the undersigned recommends that Petitioner's claim be denied pursuant to § 2254(d) and (e).

Additionally, the undersigned finds that Petitioner forfeited his right to confront the victim in this case by his own wrongdoing, by murdering her.  The United States Supreme Court recognizes the doctrine of forfeiture by wrongdoing as an exception to the requirement, under the Confrontation Clause, that statements by unavailable witnesses must be subjected to cross-examination because it does not "purport to be an alternative means of determining reliability."  <u>Crawford v. Washington</u>, 541 U.S. 36, 62 (2004)("[T]he rule of forfeiture by wrongdoing (<u>which we accept</u>) extinguishes confrontation claims on essentially equitable grounds[.]") (emphasis added).  <u>See</u> <u>also</u>, <u>Davis v. Washington</u>, 547 U.S. 813, 833 (2006) ("That is, one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation.").  In recognizing the doctrine of forfeiture, the Court cited its decision in <u>Reynolds v. United States</u>, 98 U.S. 145 (1879).

In <u>Reynolds</u> the Supreme Court observed the following:

The Constitution does not guarantee an accused person against the legitimate

consequences of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege. If, therefore, when absent by his procurement, their evidence is supplied in some lawful way, he is in no condition to assert that his constitutional rights have been violated.

Id. at 158. The Court further said, "[t]he [forfeiture by wrongdoing] rule has its foundation in the maxim that no one shall be permitted to take advantage of his own wrong[.]" Id. at 159. See also United States v. Gray, 405 F.3d 227, 240-41 (4th Cir.) (noting that Crawford confirms continuing validity of forfeiture by wrongdoing doctrine), cert. denied, 546 U.S. 912 (2005); United States v. White, 116 F.3d 903, 911 (D.C. Cir.) (per curiam) (noting that defendant may lose right of confrontation through misconduct and that it is hard to imagine worse misconduct than murder of potential witness), cert. denied, 522 U.S. 960 (1997).

The Fourth Circuit held in United States v. Gray, that statements by murdered victim could be admitted against the murderer, on trial for mail and wire fraud relating to her receipt of the victim's life insurance proceeds, because the common-law forfeiture doctrine, as codified in the federal rules, "applies whenever the defendant's wrongdoing was intended to, and did, render the declarant unavailable as a witness against the defendant, without regard to the nature of the charges at the trial." 405 F.3d 227, 241 (4th Cir. 2005)(emphasis in original).

These principles readily apply in the instant case. By at least a preponderance of the evidence, the State showed that Petitioner murdered the victim. In fact, as set forth in the above statement of facts, there was overwhelming evidence that Petitioner murdered the victim. Police officers found Petitioner crawling out of a broken glass window in a door to the victim's apartment, he said a woman was hurt inside, he went back into the apartment and ran to the front door, police had to chase him down in the parking lot, and they noticed a deep cut in his hand. The victim was found brutally stabbed to death with multiple knife wounds, a pool of blood was on the floor, and

a broken knife was found. Furthermore, DNA tests of Petitioner's fingernail scrapings revealed the victim's DNA, Petitioner's own blood was found on the victim's couch and handrail to her stairway, and the victim's blood was found on the broken knife. State v. Byers, 175 N.C. App. at 283-85. Since Petitioner murdered the victim and thus prevented her from testifying at trial, the undersigned finds that he waived his right of confrontation by his own wrongdoing.

Furthermore, any possible Confrontation Clause error was harmless. As detailed above, the other evidence of Petitioner's guilt was overwhelming. Therefore, even if a confrontation error had occurred, which the undersigned has determined did not, it did not have a "substantial and injurious effect" on the jury's verdict and was harmless on federal habeas review. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (harmless error standard on federal habeas review requires trial error to have "substantial and injurious effect or influence in determining the jury's verdict" to warrant relief); O'Neal v. McAninch, 513 U.S. 432, 436 (1995) (stating that error is not harmless where habeas court "in grave doubt" about effect on jury); Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (Brecht "substantial and injurious effect" standard for determining harmless error on federal habeas review applies even where state courts did not apply harmless error analysis).

In sum, the undersigned finds that Petitioner's Crawford claim with respect to the trial court's admission of hearsay through Williams' testimony is without merit, should be summarily denied under the deferential standards of review contained in section 2254(d) and (e), is forfeited by his own wrongdoing, and constitutes harmless error under Brecht.

### 2. Hearsay Statements of the Decedent

The North Carolina Court of Appeals adjudicated Petitioner's other two arguments under Crawford: 1) that the trial court erred in allowing non-sworn hearsay testimony of statements made by the decedent in violation of due process; and (2) that the trial court committed plain error by

admitting testimonial hearsay statements of the decedent which were not subject to cross-examination, together as follows:

> Next, defendant argues the trial court erred by allowing into evidence, the hearsay statements of the victim in violation of Crawford v. Washington.

> In State v. Pate, 62 N.C. App. 137, 139, 302 S.E.2d 286, 288 (1983), this Court affirmatively stated defendant waives the benefit of an objection when the same or similar evidence is admitted without objection. See also, State v. Whitley, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984) ("Where evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost.").

> Defendant argues the admission of the following constituted error: (I) a criminal complaint signed by the victim regarding a domestic dispute occurring on 30 August 2001, involving the victim and defendant; (II) testimony of Officer Montgomery, who responded to the domestic call on 30 August 2001; (III) testimony of Officer Santaniello, who testified that defendant assaulted the victim on 30 August 2001, hit her in the back of the neck, pushed her in the back, choked her, and threatened to kill her; and (IV) testimony of the victim's great-grandmother that the victim was afraid of defendant.

> Officer Montgomery testified without objection that on 30 August 2001, the victim was extremely upset, shaking, and almost crying. The victim expressed her fear of defendant and he threatened to kill her. Defendant was angry because the victim would not go home with him and assaulted her by hitting her with his fist on her head, face, and back, then pushing her down. Officer Montgomery then drove the victim and the aunt to the Magistrate's office to file criminal complaints.

> As Officer Montgomery was allowed to testify to the aforementioned without objection from defendant, defendant lost the benefit of any objection he may have made in relation to similar testimony from Officer Santaniello and the victim's aunt. Also, since Officer Montgomery's testimony essentially mimicked the statements the victim made in her criminal complaint form, defendant lost the benefit of any objection made to admission of the form. n3 This assignment of error is overruled.

> FOOTNOTE
> n3 We note defendant did assign, in his Assignment of Error Number 5, as plain error the admission of the victim's criminal complaint form. For the reasons stated herein, defendant has lost the benefit of any objection to admission of the criminal complaint form. Moreover, defendant has failed to show a different outcome would have resulted had the criminal complaint form not been admitted. See State v. Parker, 350 N.C. 411, 427, 516 S.E.2d 106, 118 (1999)

("[Plain error] is error so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." (quotations omitted)).

State v. Byers, 175 N.C. App. at 290.

This state court adjudication is based on Petitioner's default by failing to object to these pertinent portions of Officer Montgomery's testimony at trial (T 25 February p. 109-112).[1] Where a petitioner fails to comply with a state procedural requirement, such as the requirement of contemporaneous objection at trial to preserve an issue for appeal, and the failure provides adequate and independent grounds for the state court's denial of relief, federal review of the issue will also be barred where the state has expressly relied on procedural default. See Coleman v. Thompson, 501 U.S. 722 (1991); Harris v. Reed, 498 U.S. 255 (1989), Murray v. Carrier, 477 U.S. 478 (1986); Wainwright v. Sykes, 433 U.S. 72, 81 (1977); Daniels v. Lee, 316 F.3d 477, 487-88 (4th Cir.), cert. denied, 540 U.S. 851 (2003).

The fact that the Court of Appeals alternatively found no plain error, does not release Petitioner from the procedural bar. This is because application of the plain error standard of review represents enforcement, rather than a reprieve from the procedural bar. See Daniels v. Lee, 316 F.3d at 487-88 (availability of plain error review in state appellate court of claim which was procedurally defaulted because not raised at trial does not eliminate prior procedural default); Reid v. Warden, 708 F.Supp. 730 (W.D.N.C. 1989) (plain error review by North Carolina appellate court does not waive procedural default for failing to make contemporaneous objection to jury instruction at trial). Consequently, the undersigned finds that Petitioner's claims regarding hearsay statements of the

---

[1] Although these transcript pages show counsel objected to some portions of Officer Montgomery's testimony, he did not object to the significant or pertinent portions referenced in the Court of Appeals' opinion.

decedent are procedurally barred and Petitioner has failed to raise grounds to overcome the default.

Furthermore, the undersigned finds that even if these claims were not procedurally barred, Petitioner's <u>Crawford</u> claims are without merit. As described in the Court of Appeals' opinion, Officer Montgomery's testimony about the statements of the victim regarding the prior incident were non-testimonial. The victim's statements were in essence a "cry for help" to meet an ongoing emergency and thus not precluded by the Confrontation Clause. <u>Davis v. Washington</u>, 547 U.S. 813, 827-29 (statements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency).

Additionally, the undersigned finds, as discussed above, that Petitioner forfeited his right to confront the victim in this case by his own wrongdoing, by murdering her. Therefore, the rule of forfeiture by wrongdoing also applies to these <u>Crawford</u> claims.

Finally, even if this Court had determined that a portion of the challenged testimony was testimonial and thus improperly admitted under <u>Crawford</u>, the other evidence of Petitioner's guilt was still overwhelming, as detailed above, and thus, it did not have a "substantial and injurious effect" on the jury's verdict and was harmless on federal habeas review. <u>See</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993) (harmless error standard on federal habeas review requires trial error to have "substantial and injurious effect or influence in determining the jury's verdict" to warrant relief).

In sum, the undersigned finds that Petitioner's <u>Crawford</u> claims with respect to the trial court's admission of the victim's hearsay testimony are procedurally barred, are without merit, are forfeited by his own wrongdoing, and constitute harmless error under <u>Brecht</u>.

## B. CLAIM TWO

Following Judge Mullen's Order dated April 12, 2010, Petitioner's amended claim alleges that his Fourteenth and Fifth Amendment Due Process rights were violated by the trial court allowing use of prior convictions that were unrelated and inadmissible under Rule 404(b). This contention corresponds with Petitioner's argument IV on direct appeal.  The Court of Appeals adjudicated and denied this contention on its merits as follows:

> Defendant next argues the trial court erred by allowing into evidence a prior conviction concerning an attack against the victim and a criminal complaint form regarding an assault against the victim's aunt.
>
> As stated supra Issue II, a defendant loses the benefit of an objection if the same or similar evidence is admitted without objection. See Whitley, 311 N.C. at 661, 319 S.E.2d at 588. Defendant argues the trial court erred in allowing into evidence Williams' testimony concerning defendant's prior conviction for assaulting the victim, and the aunt's criminal complaint concerning an attack occurring on 30 August 2001, where defendant attacked the aunt with a knife and threatened to kill her. However, Officer Montgomery was allowed to testify without objection that the victim had previously prosecuted defendant for assault, and on 30 August 2001, the aunt reported defendant threatened to kill her while holding a knife. Officer Montgomery's testimony regarding the attack on the aunt essentially mimicked the statements the aunt made on her criminal complaint form.
>
> Defendant has lost the benefit of any objection to admission into evidence of the Williams' testimony regarding defendant's prior conviction and the admission of the aunt's criminal complaint form. This assignment of error is overruled.

State v. Byers, 175 N.C. App. at 290-291.

As set forth above with regard to Petitioner's claims regarding hearsay statements of the decedent, the federal court is precluded from reviewing the merits of any claim that was found to be procedurally barred by the state court on adequate and independent state grounds.  Since the North Carolina Court of Appeals found that Petitioner's claim was procedurally barred because he failed to object to the significant or pertinent portions of Officer Montgomery's testimony, this Court is precluded from reviewing the merits of the claim.

In addition, for the same reasons and authorities set forth above concerning Petitioner's claim regarding Williams' testimony, Petitioner's contention is without merit, is forfeited by his own wrongdoing, and constitutes harmless error under <u>Brecht</u>.

In sum, the undersigned finds that Petitioner's claim that his Fourteenth and Fifth Amendment Due Process rights were violated by the trial court allowing use of prior convictions that were unrelated and inadmissible under Rule 404(b) is procedurally barred, is without merit, is forfeited by his own wrongdoing and constitutes harmless error under <u>Brecht</u>.

## C. <u>CLAIM FIVE</u>

As stated in the amended Petition, Petitioner claims that he received ineffective assistance of counsel due to trial counsel's failure to object to the admission of evidence from specific witnesses concerning his prior convictions. To support this contention, Petitioner asserts that trial counsel was ineffective for failing to object at trial and preserve for appeal the issue of Williams' testimony and statements to law enforcement, Claim One, part 1; the hearsay testimony of decedent, Claim One part 2; and the evidence concerning Petitioner's prior convictions, Claim Two.

Ineffective assistance of counsel claims are governed by the two-part standard articulated by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). First, a petitioner must establish that counsel's representation "fell below an objective standard of reasonableness," which is judged by prevailing professional norms (i.e., the "performance prong"). <u>Id.</u> at 687-88. Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689; <u>see</u> <u>also</u>, <u>Burket v. Angelone</u>, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis"); <u>Spencer v. Murray</u>, 18 F.3d 229, 233 (4th Cir. 1994) (court must "presume that challenged

acts are likely the result of sound trial strategy.").

Second, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,"(i.e., the "prejudice prong"). <u>Strickland</u>, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> The burden is on a petitioner to establish not merely that counsel's errors created the possibility of prejudice, but rather "that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension." <u>Murray v. Carrier</u>, 477 U.S. 478, 494 (1986)(quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)).

The two prongs of the <u>Strickland</u> test are "separate and distinct elements of an ineffective assistance claim," and a successful petition "must show both deficient performance and prejudice." <u>Spencer</u>, 18 F.3d at 233. A court deciding an ineffective assistance claim need not approach the inquiry in the same order or even address both components of the inquiry if a petitioner makes an insufficient showing on one component. <u>Strickland</u>, 466 U.S. at 697.

Petitioner raised the substance of this claim in his July 31, 2006 MAR filed in Mecklenburg County Superior Court . Judge Diaz summarily denied this MAR, including the substance of his current ineffective assistance of counsel claim on its merits, applying <u>Strickland</u>. Judge Diaz's MAR order did not reach a result contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, and in fact, applied Supreme Court law as set forth in <u>Strickland</u>. Nor was it based on an unreasonable determination of facts, in light of the evidence presented in the state court proceeding. Therefore, Judge Diaz's MAR order should be upheld under the deferential standards of review contained in section 2254(d) and (e). <u>See</u> <u>Bell v. Cone</u>, 543 U.S. 447, 455 (2005) and <u>Early v. Packer</u>, 537 U.S.

3, 8 (2002).

Furthermore, as set forth in detail above, Petitioner's Claims One and Two are without merit, waived by the doctrine of wrongdoing, and are harmless error under <u>Brecht</u>. Therefore under the <u>Strickland</u> test, trial counsel could not have committed a professional dereliction by failing to object, and even if he did, there is no reasonable probability of a different result. Consequently, the undersigned finds that Petitioner's ineffective assistance of counsel claim is without merit.

In sum, Petitioner's ineffective assistance of counsel claim should be summarily denied pursuant to the deferential standards of review contained in section 2254(d) and (e) and is without merit under the <u>Strickland</u> test.

## V.  <u>RECOMMENDATION</u>

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment be <u>GRANTED</u> and Petitioner's Petition for a Writ of Habeas Corpus be <u>DISMISSED</u>.

## VI.  <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985); <u>Diamond</u>, 416 F.3d at 316; <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003); <u>Wells</u>, 109 F.3d at 201; <u>Wright v. Collins</u>,

766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Order to counsel for the Respondent, to the Petitioner, and to the <u>Honorable Robert J. Conrad, Jr.</u>

**SO RECOMMENDED.**

Signed: September 7, 2010

David S. Cayer
United States Magistrate Judge